IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00247-JLK

GREG LOPEZ,
RODNEY PELTON, and
STEVEN HOUSE,

    Plaintiffs,

v.

JENA GRISWOLD, Colorado Secretary of State, in her official capacity, and
JUDD CHOATE, Director of Elections, Colorado Department of State, in his official capacity,

    Defendants.

## SCHEDULING AND DISCOVERY ORDER

### 1. DATE OF CONFERENCE

Vacated based on the filing of an acceptable Stipulated Scheduling and Discovery Order.

### 2. STATEMENT OF CLAIMS AND DEFENSES

a. *Plaintiffs:*

Colorado's campaign finance regime is unconstitutional in at least two respects.

First, the state's individual contribution limits are so low that they violate the Constitution. Colorado has a two-tiered system. The Tier 1 limit—which applies to most, though not all, statewide offices—is $625 per election, or $1250 per election cycle (i.e., primary and general election together). The Tier 2 limit—which applies to legislative races, candidates for district attorney, and a few other state government offices—is $200 per election, or $400 per election cycle. These limits are among the lowest in the

country (only one state has lower Tier 1 limits, and no state has lower Tier 2 limits) and are not adequately indexed to inflation (the Tier 1 limits have only increased 25% in the last twenty years while the relevant measure of inflation has increased 56%; the Tier 2 limits have been the same since 2002). Ultimately, the limits are so low that they violate the First and Fourteenth Amendments.

Second, the state unconstitutionally punishes candidates who refuse to limit their campaign spending. The state promulgates "voluntary" spending limits for campaigns. However, if a candidate refuses to accept the "voluntary" limits but his opponents accept the limits, the candidates who accept spending limits get a contribution limit twice as high as the other candidates (i.e., it increases to $2500 per contributor for Tier 1 candidates or $800 per contributor for Tier 2 candidates). There is no justification for this differential other than a mere desire to limit money spent on politics, and that is an illegitimate government aim. This differential contribution limit system likewise violates the First and Fourteenth Amendments.

Plaintiffs' claims are asserted under 42 U.S.C. § 1983 (2018). This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a) (2018).

b.   *Defendants:*

The challenged sections of the Colorado Constitution are constitutional.

First, Colorado's contribution limits for individual contributors, including natural persons and certain other political entities, are closely drawn to the sufficiently important government interest of preventing corruption and its appearance. These contribution limits therefore do not violate the First Amendment.

Second, Colorado's voluntary spending limit system enhances, rather than suppresses, political speech by offering candidates a meaningful choice. Some candidates elect to abide by voluntary spending limits, and in return are able to accept

larger individual contributions. But by choosing to cap their expenditures, those candidates have no speaking advantage over their opponents. In fact, it is the candidate who elects not to abide by voluntary spending limits who has the ability to speak more than the candidate who opts into the system. The voluntary spending limit system is therefore also constitutional.

### 3.  UNDISPUTED FACTS

The following facts are undisputed:

a. In 2022, Colorado's primary elections are scheduled for June 28. The general election is scheduled for November 8.

b. Plaintiff Pelton is a member of the Colorado House of Representatives. He was first elected in 2018 and assumed office in January 2019. As of the date of this Order, he is a candidate for the Colorado Senate. He officially registered his candidacy with the Secretary of State on November 24, 2021. He has no primary-election opponent. Plaintiff Pelton had a primary-election opponent at the time this suit was filed, but that person is no longer a candidate.

c. Plaintiff Lopez is currently a candidate for governor. He officially registered his candidacy with the Secretary of State on August 22, 2019. He has one primary-election opponent.

d. Plaintiff Lopez's primary-election opponent, Heidi Ganahl, chose to accept voluntary spending limits for her campaign on September 10, 2021. She withdrew that choice on January 31, 2022 (after this suit was filed). In the interim, she accepted more than 100 individual contributions greater than $1250.

e. Plaintiff Lopez was also a candidate for the 2018 gubernatorial election, but he did not capture his party's nomination.

f. Plaintiff House has contributed to campaigns that are subject to Colorado's

      contribution limits. This includes more than twenty contributions that were at the legal maximums.

g. Colorado's campaign contribution limits are in Article XXVIII of its state constitution. Article XXVIII was added to the constitution in 2002.

h. As of 2022, the Tier 1 contribution limit (which applies to most—but not all—statewide candidates) is $625 per election or $1250 per election cycle (i.e., primary and general election combined). This limit applies to all contributors except political parties and small donor committees (both of which are subject to different contribution limits). Since 2002, the Tier 1 limit has increased 25% and the relevant measure of inflation has increased at least 61%.

i. As of 2022, the Tier 2 contribution limit (which applies to legislative races, candidates for district attorney, and a few other state-level elected offices) is $200 per election or $400 per election cycle (i.e., primary and general election combined). This limit applies to all contributors except political parties and small donor committees (both of which are subject to different contribution limits). The Tier 2 limits have not changed since they were added to the constitution in 2002.

j. No state has lower limits on state legislative candidates than Colorado does.

k. The Secretary of State will next adjust the contribution limits for inflation (if required to do so under the terms of article XXVIII) in the first quarter of 2023.

l. The Secretary of State's Office maintains a publicly available, online database of campaign contributions and expenditure data called "TRACER." Campaign committees (and some other organizations) report their contributions and expenditures to the Secretary via that system, on a schedule established by law. Those reports are immediately available in the database. Such data has been collected and maintained in TRACER since 2010.

m.  The incumbent governor, Jared Polis, reported to the Secretary of State that his 2018 election campaign spent approximately $23.8 million. Of that amount, approximately $23.3 million came from then-candidate Polis himself.

### 4. (OMITTED PER COURT ORDER)

### 5. REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER FED. R. CIV. P. 26(F)

a.  *Date of Rule 26(f) meeting:*

April 7, 2022.

b.  *Names of each participant and each party represented:*

Daniel E. Burrows, representing Plaintiffs

Michael T. Kotlarczyk, representing Defendants

c.  *Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a):*

None.

d.  *Statement as to when Rule 26(a) disclosures were made or will be made:*

Both parties made Rule 26(a) disclosures on April 21, 2022. Given personal obligations (such as the tax filing deadline) and workloads of counsel (for example, counsel for Plaintiffs had a Colorado Supreme Court brief due on April 18), the parties stipulated to this slightly later disclosure date.

e.  *Statement concerning any agreements to conduct informal discovery:*

No current agreements, although Plaintiffs did disclose certain information relating to Seth Masket's expert opinions prior to the preliminary injunction hearing.

f.  *Statement concerning any agreements or proposals regarding electronic discovery:*

Computer data compiled or analyzed by expert witnesses will be provided to the other party in both CSV and native format.

The Secretary of State's TRACER database is obviously electronic. However, because it is publicly available, special protocols for discovery are unnecessary. All parties can access this data without the need for discovery requests or disclosures.

g. *Statement concerning any other agreements or proposals to reduce discovery and other litigation costs:*

The parties have not made any special agreements to reduce litigation costs. However, because Plaintiffs and several other witnesses have already testified under oath in the hearing on the motion for a preliminary injunction, the parties believe this reduces the need for discovery from those witnesses.

h. *Statement regarding use of the unified exhibit numbering system:*

The parties agree to continue to use the exhibits identified for the hearing on the motion for a preliminary injunction as necessary. Further exhibits will continue from that numbering.

i. *(omitted per court order)*

### 6. CASE PLAN AND SCHEDULE

a. *Deadline for Joinder of Parties*

May 20, 2022

b. *Deadline to Amend Pleadings*

June 24, 2022

c. *Discovery Cut-Off*

October 21, 2022

d. *Dispositive Motion Deadline*

November 18, 2022. Responses are due within twenty-one days of service of the motion. A reply may be filed within fourteen days of service of the response.

e. *Expert Witness Disclosure*

(1) Statement regarding anticipated fields of expert testimony, if any:

Both parties anticipate presenting expert testimony on

- the cost of campaigns for public office in Colorado
- the relationship between contribution limits, campaign fundraising, spending, and results
- the effectiveness and cost of various campaign methods

(2) Statement regarding any limitations proposed on the use or number of expert witnesses:

Each party is limited to two (2) specially employed expert witnesses. Upon request and for good cause shown, the Court will permit additional experts to testify pursuant to Fed. R. Civ. P. 26(a)(2)(B).

(3) The parties shall designate all experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before August 1, 2022.

(4) The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before August 29, 2022.

(5) Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2), no exception to the requirements of the Rule will be allowed by stipulation of the parties unless the stipulation is approved by the Court.

f. *Deposition Schedule*

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| Plaintiff Expert 1 | Sept. 9, 2022 | 9:30 AM | 7 hrs |

| Defendant Expert 1 | Sept. 13, 2022 | 9:30 AM | 7 hrs |
|---|---|---|---|
| Plaintiff Expert 2 | Sept. 16, 2022 | 9:30 AM | 7 hrs |

The identity of deponents is contingent on what the parties disclose. Nonetheless, the parties have agreed on these dates for depositions of at least three experts. Insofar as additional experts are disclosed, the parties will agree on additional deposition dates, or conduct multiple depositions in a single day where possible.

g.  *Interrogatory Schedule*

One set of interrogatories (by each party) may be served by May 20, 2022. Responses are due within thirty-five days of service. One set of follow-up interrogatories (by each party) may be served within seven days of service of the responses to the first set.

h.  *Schedule for Request for Production of Documents*

The parties have agreed not to make any requests for the production of documents from each other.

i.  *Discovery Limitations*

   (1)   Limits on the length of any deposition:

   Depositions of non-expert witnesses shall be limited to four hours.

   (2)   Modifications to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

Parties are limited to ten total interrogatories (including subparts), subject to the two-set limitation discussed above.

   (3)   Limitations on the number of requests for production of documents and/or requests for admission:

No requests for production of documents (see Part 3.h, above). The parties are limited to one set of requests for admission, but there is no limit on the number of such requests.

j.   *Other Planning or Discovery Orders*

Requests for admission shall be served no later than June 10, 2022. Responses shall be served no later than July 8, 2022.

Depositions of any non-expert witnesses who testified under oath at the hearing on Plaintiffs' motion for a preliminary injunction are prohibited without prior approval by the Court.

## 7.   (OMITTED PER COURT ORDER)

## 8.   OTHER SCHEDULING ISSUES

a.   *Statement of those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement:*

The parties were unable to agree to any limit on the number of expert witnesses (see Part 6.e.2, above).

The parties were also unable to agree on limits regarding depositions of witnesses who have already testified in this matter (see Part 6.j, above).

b.   *Statement of anticipated motions to be filed, by whom, estimated time of filing, and any proposed briefing schedule:*

The parties do not currently anticipate any motions beyond dispositive motions. Further, they believe that there will almost certainly be contested issues of material fact relating to Plaintiffs' first claim (i.e, that the contribution limits are unconstitutionally low). Therefore, Plaintiffs have agreed not to file a dispositive motion on that issue and Defendants have agreed to limit any dispositive motion to jurisdictional issues (standing, mootness, ripeness, etc.). As noted above, the parties have agreed that, as to any

dispositive motion, responses will be due twenty-one days after the motion and a reply may be filed fourteen days after the response.

c. *Statement whether trial is to the court or jury:*

Trial is to the Court.

## 9. AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

This Stipulated Scheduling and Discovery Order may be altered or amended only upon motion showing good cause and order entered thereon. As stated elsewhere herein, I will almost always grant stipulated motions for extensions of time and changes in deadlines up to and including the signing of a pretrial order. If the parties cannot agree on such extensions, my inclination is, in the absence of abuse, to be permissive. On the contrary, I am not permissive or lenient in changing trial dates.

DATED this 3rd day of May, 2022

*/s/ John L. Kane*
John L. Kane
Senior U.S. District Judge